```
                                        ┌─────────────────────────────┐
                                        │ USDS SDNY                   │
                                        │ DOCUMENT                    │
                                        │ ELECTRONICALLY FILED        │
                                        │ DOC #: _____      │
                                        │ DATE FILED: 1/26/10         │
                                        └─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
RAJIV SHAH GOSAIN,                  :
                                    :
                  Plaintiff,        :
                                    :       09 Civ. 4172(VM)
    -  against  -                   :
                                    :       **DECISION AND ORDER**
STATE BANK OF INDIA, NEW YORK       :
BRANCH, et al.,                     :
                                    :
                  Defendants.       :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff Rajiv Shah Gosain ("Gosain") brought this action on April 21, 2009 alleging that defendants State Bank of India (New York Branch) and State Bank of India (Mumbai) (collectively, "SBI"), and Texplas India Private Ltd. ("Texplas") (collectively, "Defendants") are liable for fraud arising out of the liquidation auction of TechInvest India Private Ltd. ("TechInvest"). Defendants now move to dismiss Gosain's complaint pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)", "Rule 12(b)(2)" and "Rule 12(b)(6)").

Defendants move to dismiss Gosain's claims against SBI on the following grounds: (1) lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976 ("FSIA") pursuant to Rule 12(b)(1); (2) lack of personal jurisdiction pursuant to Rule 12(b)(2); (3) forum non

coveniens; and (4) considerations of comity.   Defendants
also move to dismiss Gosain's claims against Texplas on the
following grounds: (1) lack of personal jurisdiction pursuant
to Rule 12(b)(2); (2) lack of subject matter jurisdiction
pursuant to Rule 12(b)(1); and (3) forum non conveniens.   In
response, Gosain cross-moves for leave to serve an amended
complaint pursuant to Rule 15(a) of the Federal Rules of
Civil Procedure ("Rule 15(a)").   For the reasons discussed
below, Defendants' motion to dismiss is GRANTED and Gosain's
cross-motion is DENIED.

## I. BACKGROUND[1]

Gosain alleges that SBI and its officers engaged in a
concerted pattern of fraud and misrepresentation, dating back
to the early 1990s, that resulted in the loss in value of his
shares in TechInvest, an Indian corporation that manufactured
industrial unclad laminates in India.

On May 11, 1990, Smarrt Systems, Inc. ("Smarrt"), a
former New Jersey corporation, signed a credit agreement with
SBI's Flushing Branch ("SBI Flushing") for a loan.   At the

---

[1] The following facts and allegations are taken from Gosain's Complaint
(the "Complaint") and all documents attached thereto or referenced
therein.   The Court accepts the facts alleged here as true for the purpose
of ruling on a motion to dismiss.   See Spool v. World Child Int'l Adoption
Agency, 520 F.3d 178, 180 (2d Cir. 2008).   Except where specifically
referenced, no further citation to these sources will be made.

time, Gosain was an officer and director of Smarrt and was thus required to offer a personal guaranty as collateral for the loan.   Gosain ceased being an officer, director or shareholder of Smarrt in February 1991, and SBI allegedly agreed in writing to release his personal guaranty.

Gosain asserts that despite the agreement to release his personal guaranty, SBI proceeded in an action against him in the New York State Supreme Court, Queens County ("State Court").  SBI allegedly used a false address for Gosain in New York to attempt to effectuate service on him and then to request a default judgment against Gosain in the Queens action.   The State Court issued a default judgment against Gosain on August 6, 1991.  Thereafter, SBI in India, based on instructions received from SBI Flushing, commenced an action to obtain a judgment in India based on the default judgment in State Court.   SBI obtained a default judgment against Gosain in India on December 12, 1997 ("Indian Default Judgment").   Gosain claims that SBI misinformed the Indian court that he was an Indian citizen residing in India, rather than a U.S. citizen residing in the United States, and that the Indian court would not have entered the Indian Default Judgment if it had been correctly informed.   Based on the incorrect information, according to Gosain, the Indian court,

-3-

rather than instituting a new civil action, permitted SBI to serve Gosain in India by publication.

Gosain alleges that SBI conspired with Texplas to use the Indian Default Judgment to fraudulently liquidate TechInvest's assets at a sham auction.  By letter dated May 3, 1999, Gosain's father, K.K. Gosain, conveyed a 74% common stock interest in TechInvest to Gosain with the formal permission of the Government of India through the Reserve Bank of India ("RBI"), as legally required under Indian law since Gosain was a United States citizen.  Gosain thus succeeded his father as a director and the majority shareholder of TechInvest.  Because SBI's loan documentation required that current directors replace the personal guaranties of retiring directors, on April 26, 1999, Gosain offered SBI a personal guaranty to replace his father's guaranty.  On May 1, 1999, SBI was formally informed of the change in ownership and the reconstitution of the Board of Directors of TechInvest.

Gosain alleges that SBI refused to accept his replacement personal guaranty and elected instead to withdraw financial support to TechInvest because of the change in majority ownership and management.  SBI also froze TechInvest's bank accounts and refused to allow TechInvest to

-4-

seek alternative financing.   SBI based this decision on Gosain's default on the Smarrt loan and the State Court default judgment, despite SBI having agreed in writing in 1991 to release Gosain of any liability before the Queens action commenced.   Consequently, in October 1999, TechInvest was forced into involuntary restructuring.      A Trustee/Receiver (the "Trustee"), known as an Official Liquidator in India, was appointed by the Indian courts with SBI's approval, knowledge and consent, to oversee TechInvest's dissolution.   SBI and the Trustee were jointly responsible for overseeing the sale of TechInvest's assets, and accepted and acknowledged in writing a minimum valuation of TechInvest's assets for the purposes of sale at 6.25 million Indian Rupees, the equivalent of about 1.6 million United States Dollars ("USD").   Gosain alleges that SBI formally acknowledged his letter, dated May 21, 2001, which stated, in part, that after paying off the liabilities of TechInvest and the costs of dissolution, there would be a substantial sum of money to be remitted to him in the United States as a final dividend.

On September 23, 2003, the Trustee and SBI auctioned all the assets of TechInvest for about 90,000 USD, far below the minimum reserve sale price accepted by SBI.   Gosain alleges

-5-

that SBI conspired with Texplas to rig the auction, that
Texplas paid an assistant general manager of a local SBI
branch a bribe, and that Texplas and SBI stage-managed the
auction.  Before the auction commenced, Texplas made a 10%
deposit of the final sale price, which was required to secure
its soon-to-be final bid in the auction.  Then, at the
auction, according to Gosain, sham buyers bid in $100
increments and there was no minimum reserve price for all the
assets of TechInvest.  Gosain charges that, following the
auction, SBI signed the typed auction report, knowing it was
fraudulently obtained, and without which the auction could
not have been finalized.

     Gosain alleges that SBI failed to notify him of the
September 2003 auction, even though it was legally bound to
do so under Indian law.  Because of this failure, Gosain did
not learn of the auction until late 2005, when he was
informed by a creditor of a company that had petitioned the
Indian High Court to overturn the auction on grounds of fraud
and corruption.  Title to TechInvest's land was transferred
to Texplas in August 2004.

## II.  DISCUSSION

A.    LEGAL STANDARD

### 1.   Foreign Sovereign Immunity

SBI moves to dismiss the complaint under Rule 12(b)(1) on the ground that the Court lacks subject matter jurisdiction because SBI is immune from this lawsuit as an agency or instrumentality a foreign sovereign.  The FSIA provides "the sole basis for obtaining [subject matter] jurisdiction over a foreign sovereign in the United States." Republic of Arg. v. Weltover, Inc., 504 U.S. 607, 611 (1992) (quotations omitted).  An agency or instrumentality of a foreign sovereign is presumptively immune from suit in the federal courts unless a plaintiff demonstrates that the claim falls within a statutory exception to immunity.  See 28 U.S.C. § 1604; see also Verlinden B.V. v. Central Bank of Nig., 461 U.S. 480, 488-89 (1983).  Under the FSIA, an agency or instrumentality of a foreign state includes "any entity ... a majority of whose shares or other ownership interest is owned by a foreign state or a political subdivision thereof." 28 U.S.C. § 1603(b)(2).

When a defendant moves to dismiss a complaint on the basis of foreign sovereign immunity, the defendant "must present a prima facie case that it is a foreign sovereign."

-7-

See <u>Virtual Countries, Inc. v. Republic of S. Afr.</u>, 300 F.3d 230, 241 (2d Cir. 2002) (quotations omitted). Once the movant has made such a showing, the opposing party has the burden of presenting evidence showing that, under the exceptions to the FSIA, immunity should not be granted. <u>See</u> <u>Cabiri v. Government of Republic of Ghana</u>, 165 F.3d 193, 196 (2d Cir. 1999); <u>Cargill Int'l S.A. v. M/T Pavel Dybenko</u>, 991 F.2d 1012, 1016 (2d Cir. 1993) (citations omitted). The ultimate burden of persuasion, however, remains with the alleged foreign sovereign. <u>See</u> <u>Cargill Int'l</u>, 991 F.2d at 1016; <u>Guirlando v. T.C. Ziraat Bankasi, A.S.</u>, No. 07 Civ. 10266, 2008 WL 5272195, at *2 (S.D.N.Y. Dec. 15, 2008). When there are disputed jurisdictional fact issues, the Court has discretion to look outside the pleadings to submissions by the parties. <u>See</u> <u>Filetech S.A. v. Fr. Telecom S.A.</u>, 157 F.3d 922, 932 (2d Cir. 1998); <u>Antares Aircraft, L.P v. Federal Republic of Nig.</u>, 948 F.2d 90, 96 (2d Cir. 1991), <u>vacated on other grounds</u>, 505 U.S. 1215 (1992).

In assessing a motion to dismiss on the basis of foreign sovereign immunity, the Court must look to the substance of the allegations to determine whether one of the exceptions to the FSIA's general grant of immunity applies. <u>See</u> <u>Robinson v. Government of Malaysia</u>, 269 F.3d 133, 140 (2d Cir. 2001);

<u>Pons v. People's Republic of China</u>, No. 06 Civ. 13221, 2009
WL 3447453, at *2 (S.D.N.Y. Oct. 27, 2009).  Gosain asserts
that the Court may exercise jurisdiction under either the
commercial activity exception, 28 U.S.C. § 1605(a)(2) ("§
1605(a)(2)"), or the rights in property exception, 28 U.S.C.
§ 1605(a)(4) ("§ 1605(a)(4)"), to sovereign immunity.  (<u>See</u>
Complaint ¶ 5.)  Section 1605(a)(2) of the FSIA provides an
exception to immunity in any case in which

> the action is based [1] upon a commercial activity
> carried on in the United States by the foreign state; or
> [2] upon an act performed in the United States in
> connection with a commercial activity of the foreign
> state elsewhere; or [3] upon an act outside the
> territory of the United States in connection with a
> commercial activity of the foreign state elsewhere and
> that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).  Section 1605(a)(4) provides that a
foreign sovereign shall not be immune from jurisdiction in
any case "in which rights in property in the United States
acquired by succession or gift or rights in immovable
property situated in the United States are in issue."  28
U.S.C. § 1605(a)(4).

    2.  <u>Personal Jurisdiction</u>

    Pursuant to Rule 12(b)(2), a court is obligated to
dismiss an action against a defendant over which it has no
personal jurisdiction.  <u>See</u> Fed. R. Civ. P. 12(b)(2); <u>see</u>

also <u>In re Ski Train Fire in Kaprun, Austria on November 11,</u>
<u>2000 ("Ski Train Fire I")</u>, 230 F. Supp. 2d 403, 406 (S.D.N.Y.
2002).  However, "prior to discovery, a plaintiff challenged
by a jurisdiction testing motion may defeat the motion by
pleading in good faith ... legally sufficient allegations of
jurisdiction, i.e., by making a prima facie showing of
jurisdiction." <u>Jazini v. Nissan Motor Co.</u>, 148 F.3d 181, 184
(2d Cir. 1998) (citations and quotations omitted).   A
plaintiff "can make this showing through his own affidavits
and supporting materials ... containing averment of facts
that, if credited ..., would suffice to establish
jurisdiction over the defendant."   <u>Whitaker v. American</u>
<u>Telecasting, Inc.</u>, 261 F.3d 196, 208 (2d Cir. 2001)
(citations and quotations omitted).    "Thus, a court may
consider materials outside the pleadings, but must credit the
plaintiff's averments of jurisdictional facts as true."
<u>Pieczenik v. Cambridge Antibody Tech. Group</u>, No. 3 Civ. 6336,
2004 WL 527045, at *2 (S.D.N.Y. Mar. 16, 2004) (<u>citing</u> <u>Hsin</u>
<u>Ten Enter. USA, Inc. v. Clark Enters.</u>, 138 F. Supp. 2d 449,
452 (S.D.N.Y. 2000); <u>Metropolitan Life Ins. Co. v. Robertson-</u>
<u>Ceco Corp.</u>, 84 F.3d 560, 567 (2d Cir. 1996)).   "[W]here the
issue is addressed on affidavits, all allegations are
construed in the light most favorable to the plaintiff and

-10-

doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." <u>A.I. Trade Fin., Inc. v. Petra Bank</u>, 989 F.2d 76, 79-80 (2d Cir. 1993).

The determination of whether a federal court has personal jurisdiction over a defendant is a two-step process. First, the court must determine whether the plaintiff has shown that the defendant is subject to personal jurisdiction under the forum state's laws. <u>See Bensusan Rest. Corp. v. King</u>, 126 F.3d 25, 27 (2d Cir. 1997). Second, the court must evaluate whether its assertion of jurisdiction comports with the requirements of due process. <u>See id.</u>

Under New York law, a foreign corporation can be sued for all purposes if it is present or "doing business" in the state. <u>See</u> N.Y. C.P.L.R. § 301 ("CPLR § 301"); <u>Aerotel, Ltd. v. Sprint Corp.</u>, 100 F. Supp. 2d 189, 191 (S.D.N.Y. 2000). A foreign corporation is "doing business" in New York if it is "engaged in such a continuous and systematic course" of business as to warrant a finding of its "presence in the jurisdiction." <u>In re Ski Train Fire in Kaprun, Austria on November 11, 2000 ("Ski Train Fire II")</u>, No. 01 MDL 1428, 2003 WL 22909153, at *2 (S.D.N.Y. Dec. 9, 2003). "The doing business standard is a stringent one because a corporation

-11-

which is amenable to the Court's general jurisdiction may be sued in New York on causes of action wholly unrelated to acts done in New York." Jacobs v. Felix Block Arbon Verlag fur Buhne film und Funk KG, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001) (quotations omitted).

B.   SUBJECT MATTER JURISDICTION AS TO CLAIMS AGAINST SBI

SBI moves to dismiss Gosain's claims on the basis that the Court lacks subject matter jurisdiction under the FSIA. Gosain does not dispute that the FSIA applies to his claims against SBI.  (See Complaint ¶ 5.)  The government of India owns a majority of the shares of SBI and SBI is thus an instrumentality of a foreign state pursuant to 28 U.S.C. § 1603 (b)(2). As a result, SBI is "presumptively immune from the jurisdiction of the United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993). Gosain asserts that, despite the applicability of the FSIA, the Court has jurisdiction pursuant to two exceptions to sovereign immunity.

1.   Commercial Activity Exception

Gosain argues that SBI's conduct satisfies the third prong of the commercial activity exception to the FSIA. The

-12-

third prong provides jurisdiction where a claim is "based upon ... an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  Gosain alleges that SBI's tortious commercial activity in India caused a direct effect in the United States.  (See Complaint ¶ 5.)

As an initial matter, the Court must determine whether SBI's conduct was "commercial activity" under the FSIA.  A foreign sovereign engages in commercial activity for the purposes of the FSIA where it acts "like a private player in the marketplace."  Hanil Bank v. PT Bank Negara Indon., 148 F.3d 127, 131 (2d Cir. 1998); see also Weltover, 504 U.S. at 614.  Further, acts of a sovereign are "in connection with" a commercial activity for the purposes of § 1605(a)(2) when there is a substantive connection or a causal link between the acts and the commercial activity.  See Hanil Bank, 148 F.3d at 131.  As a secured creditor to TechInvest, SBI was engaged in commercial activity just as any other private bank or creditor would be in the marketplace.  As such, the Court finds that SBI's allegedly fraudulent acts, all of which arise out of its role as secured creditor of TechInvest, constitute commercial activity for the purposes of the FSIA.

-13-

The parties do not dispute that the commercial activity at issue involves conduct outside of the United States. Therefore, what remains in dispute is whether SBI's actions had a direct effect in the United States.

Gosain alleges that SBI's fraudulent conduct directly caused his losses as a shareholder in TechInvest in the United States and thus satisfies the third prong of the commercial activity exception. Under the FSIA, an effect is direct "if it follows as an immediate consequence of the defendant's legally significant act." Weltover, 504 U.S. at 618 (quotations omitted); Kensington Int'l Ltd. v. Itoua, 505 F.3d 147, 157 (2d Cir. 2007). "The effect need not be substantial or foreseeable, but it must be something more than trivial or incidental." Kensington Int'l, 505 F.3d at 158 (citation omitted). "Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually to reach the shores of the United States." Id. (citing Virtual Countries, 300 F.3d at 236). Here, the record does not support a finding that SBI's conduct in India had a direct effect in the United States.

Accepting as true Gosain's allegation that SBI executed an elaborate scheme to defraud him by engaging strawmen to rig the bids at TechInvest's liquidation auction, the Court

-14-

cannot conclude that these actions had a "direct" or "immediate" consequence in the United States. Gosain argues that the fraudulent auction conducted in India caused a direct effect by devaluing his shares in TechInvest, a loss which he reported on his U.S. tax returns. However, "the fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone, suffice to satisfy the direct effect prong of the commercial activity exception." Kensington Int'l, 505 F.3d at 158 (citing Antares Aircraft, 999 F.2d at 36). "If a loss to an American individual ... resulting from a foreign tort were sufficient standing alone to satisfy the direct effect requirement, the commercial activity exception would in large part eviscerate the FSIA's provision for immunity for foreign states." Id.

Despite acknowledging that financial loss suffered by an individual in the United States is insufficient to constitute a direct effect, Gosain points to Ninth Circuit cases in which the plaintiff's claim is for breach of contract and the foreign sovereign has allegedly failed to provide payment or performance in the United States. See Siderman de Blake v. Republic of Arg., 965 F.2d 699, 710 (9th Cir. 1992); Meadows v. Dominican Republic, 817 F.2d 517, 522-23 (9th Cir. 1987).

In _Siderman_, the Argentine government expropriated and operated a hotel company, of which plaintiffs were shareholders, and the Ninth Circuit remanded the proceedings for jurisdictional discovery to allow the plaintiff to determine whether dividend payments were due in the United States. See _Siderman de Blake_, 965 F.2d at 711. Gosain argues that his situation is analogous to the shareholders in _Siderman_. Gosain has not established that his TechInvest shares are to be paid in the United States, but is requesting an opportunity to conduct jurisdictional discovery in order to determine if the sale proceeds of his TechInvest shares are to be paid in the United States. (_See_ Memorandum of Law in Opposition to Defendants' Consolidated Motion to Dismiss, dated October 7, 2009 ("Pls.' Opp. Memo"), at 8-9.)

The Court, however, is not persuaded that Gosain's claims are analogous to _Siderman_ or the other Ninth Circuit FSIA cases in which a potential direct effect was determined to exist based on a breach of contract. The record plainly indicates that the sale proceeds of Gosain's shares, if sold, are to be deposited in an Indian bank account. (_See_ Affidavit in Opposition to Motion to Dismiss, dated September 29, 2009 ("Gosain Affidavit"), Exs. 9, 13.) Gosain argues that his letter correspondence with a New Delhi branch of SBI

-16-

demonstrates that SBI "specifically agreed to remit the balance of the proceeds from the sale of Techinvest assets to [him] in the United States."  (Id. ¶ 18.)  However, even if the letter correspondence constitutes a contractual agreement, the letter clearly indicates that funds may be remitted to Gosain's bank account in the United States only after compliance with existing Indian regulations on such remittances. (See id., Ex. 9.)  Indeed, Gosain has submitted a letter dated September 4, 2009, in which he sought clarification from Barclays bank in India as to whether the sale proceeds of his TechInvest stock may be repatriated to the United States under existing Indian regulations.[2]  (See id., Ex. 13.)  The bank's response indicates that assets in India acquired by way of inheritance, once deposited into an Indian account, may be remitted in an amount "not exceeding USD 1 million per financial year."  (Id.)

The Court thus finds that the allegedly fraudulent auction of TechInvest's assets did not have any direct effect

---

[2] Gosain has also submitted a letter addressed to him and dated December 31, 1999 from RBI in which the bank indicates that the TechInvest shares conveyed to him by his father by way of gift were not to be repatriated under existing Indian regulations. (See Complaint, Ex. 12.)  The letter states, "[t]he sale proceed of shares (if sold at a later date with Reserve Bank approval) will be credited [to the account] of the transferee ... and no repatriation thereof will be permitted."  (Id.)  According to Gosain's submissions, the RBI's guidelines have changed from 1999 to 2009, and India has allowed the transfer of the type of funds at issue to United States bank accounts since 2002.  (See Gosain Affidavit ¶ 43.)

in the United States. Payment on any contractual arrangement between Gosain and SBI was not to be made in the United States, but rather in India. The immediate consequence of SBI's allegedly fraudulent oversight of the TechInvest auction was, at most, a financial loss suffered by Gosain in India. If and when Gosain sells his TechInvest stock and is able to transfer the sale proceeds of his TechInvest stock to the United States pursuant to Indian regulations, any resulting loss in the United States would be an indirect effect of SBI's allegedly fraudulent conduct.

Further, all of the legally significant acts underlying Gosain's present complaint took place in India. Even if jurisdictional discovery were permitted, and, contrary to the record as submitted, the sale proceeds of Gosain's TechInvest stock are to be deposited directly into Gosain's United States bank account, Gosain's claims against SBI would still not survive under the Second Circuit's jurisdictional analysis in FSIA cases. Even where financial loss is suffered in the United States, "[t]he Second Circuit held in Antares that jurisdiction under the FSIA does not lie where, as here, all legally significant acts occur outside the United States." Virtual Countries, Inc. v. Republic of S. Afr., 148 F. Supp. 2d 256, 268 (S.D.N.Y. 2001) (quotation

-18-

omitted) (<u>citing</u> <u>Antares</u>, 99 F.2d at 36-37).  Although Gosain
alleges an elaborate conspiracy involving actions by SBI
Flushing in Queens, New York, the Court finds that all of the
legally significant acts underlying his present complaint
took place in India.  Gosain's shares in TechInvest were
conveyed to him by his father in India; Gosain's rejected
attempt to substitute his own personal guaranty for his
father's took place in India; and all of the acts underlying
the allegedly fraudulent auction of TechInvest's assets took
place in India.  In fact, reflecting the occurrence in India
of the core facts at issue here, creditors of TechInvest
instituted legal proceedings still pending in India
challenging the validity of the auction sale -- substantially
alleging the circumstances and seeking the relief Gosain
claims here.  (<u>See</u> Gosain Affidavit, Ex. 12 ¶ 7.)  This Court
is not the proper forum for adjudicating any remaining
grievances arising out of the State Court litigation.

     2.   <u>Rights in Property Exception</u>

Gosain also alleges that the Court has subject matter
jurisdiction under the rights in property exception to
foreign sovereign immunity.  (<u>See</u> Complaint ¶ 5.)  The FSIA
provides that a foreign sovereign is not immune from suit
where "rights in property in the United States acquired by

-19-

succession or gift, or rights in immovable property situated in the United States are in issue." § 1605(a)(4). There is no dispute that Gosain received his TechInvest shares as a gift from his father in India. (See Pls.' Opp. Memo at 10.) Gosain argues, however, that the rights in property exception to immunity should nevertheless apply because the "shares are physically in the United States." (Id. at 9.) But Gosain's reliance on this exception to the FSIA is misguided. The rights in property exception was intended to provide the district courts with subject matter jurisdiction where rights in property in the United States are in dispute because of a competing claim by a foreign sovereign. See In re Republic of Phil., 309 F.3d 1143, 1150-51 (9ᵗʰ Cir. 2002) (citing H. Rep. No. 94-1487, 94th Cong. 2d Sess. 6619); Fickling v. Commonwealth of Austl., 775 F. Supp. 66, 72 (E.D.N.Y. 1991). "[Congress] did not intend to open the courts to all suits involving inherited or donated property." Asociacion de Reclamantes v. United Mexican States, 561 F. Supp. 1190, 1197 (D.D.C. 1983), aff'd on other grounds, 735 F.2d 1517 (D.C. Cir. 1984). Here, Gosain's action is not based upon any competing claim by SBI to property in the United States. Instead, Gosain has brought this suit for damages based on SBI's allegedly tortious conduct in India. Accordingly, the Court finds that

-20-

it lacks subject matter jurisdiction to hear this action under the rights in property exception to sovereign immunity.

B.   PERSONAL JURISDICTION AS TO CLAIMS AGAINST TEXPLAS

Texplas moves to dismiss Gosain's claims for lack of personal jurisdiction. As described above, under New York law, a foreign corporation can be sued for all purposes if it is present or "doing business" in the state. Jacobs, 160 F. Supp. 2d at 731. A plaintiff whose complaint is challenged on personal jurisdiction grounds may defeat the motion by making a prima facie showing of jurisdiction through his own affidavits and supporting materials. See Jazini, 148 F.3d at 184.

Gosain alleges that Texplas is a foreign corporation domiciled in India that transacts business in New York. (See Complaint ¶ 5.) In support, Gosain has submitted two affidavits of an Indian attorney, Mohd. Shakeel ("Shakeel"). (See Gosain Affidavit ¶¶ 64-65.) One of Shakeel's affidavits, dated September 29, 2009, avers that a former employee of Texplas, Mr. Chand ("Chand"), told him that Texplas has an office in New York City, maintains at least one bank account in New York, has employees in New York, and regularly solicits business in New York. (See id., Ex. 17 ¶ 11.) While it is proper for a court to rely on affidavits to establish

-21-

jurisdictional facts, hearsay evidence submitted by a plaintiff is not sufficient to defeat a motion to dismiss for lack of personal jurisdiction. See Ariel Maritime Group, Inc. v. Pellerin Milnor Corp., No. 88 Civ. 6447, 1989 WL 31665, at *2 n.4 (S.D.N.Y. Mar. 29, 1989; Standard Enters., Inc. v. Bag-It, Inc., 673 F. Supp. 1216 (S.D.N.Y. 1987). As a general matter, Federal Rule of Civil Procedure 56(e) ("Rule 56(e)") offers guidance when considering evidence outside the pleadings. See Exchange Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976); see also Ariel Maritime, 1989 WL 31665, at *2 n.5 (evaluating evidence outside the pleadings under Rule 56(e) to decide motion to dismiss for lack of personal jurisdiction). Rule 56(e) requires that affidavits be made "on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). Shakeel's averments based on Chand's purported knowledge are hearsay and Shakeel does not assert personal knowledge of facts concerning any Texplas business presence in New York.

Gosain also relies on Shakeel's affidavit, dated August 26, 2009, which states that Texplas exports products to New York from India. Specifically, Shakeel asserts,

> [T]here is sufficient evidence on a prima facie basis to enable me [sic] conclude and thereby confirm that exports

-22-

> are made by these [Texplas] entities of various products
> to USA and especially to the State of New York, where they
> have many customers. The offerings of these companies are
> made available through their respective web sites that
> customers in USA and New York utilize.

(Gosain Affidavit, Ex. 16 ¶ 33.) The above averment
constitutes the full extent of non-hearsay allegations
submitted by Gosain in support of his argument that the Court
has personal jurisdiction over Texplas.

"As this Court has repeatedly held, a defendant's website
alone cannot form the basis for general jurisdiction in New
York because the fact that a foreign corporation has a website
accessible in New York is insufficient to confer jurisdiction
under CPLR § 301." Ski Train Fire II, 2003 WL 22909153, at *3
(citing Ski Train Fire I 230 F. Supp. at 408). In determining
whether a foreign corporation's website confers jurisdiction in
New York, courts examine the nature of the website to determine
the extent of the website's interactivity and the amount of
sales to New York residents. See e.g., Allojet PC v. Vantgage
Assocs., No. 04 Civ. 5523, 2005 WL 612848, at *4-*5(S.D.N.Y.
Mar. 15, 2005); Alpha Int'l, Inc. v. T-Reprods., Inc., No. 02
Civ. 9586, 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003).
For example, in Schottenstein v. Schottenstein, No. 04 Civ.
5851, 2004 WL 2534155, at *11 (S.D.N.Y. Nov. 8, 2004), the
Court denied a motion to dismiss based on allegations of an
interactive website that resulted in substantial sales to New

-23-

York residents.  Further, in <u>Thomas Publ'g Co. v. Industrial Quick Search, Inc.</u>, 237 F. Supp. 2d 489, 491 (S.D.N.Y. 2002), the Court found that plaintiffs had made a prima facie showing of jurisdiction under CPLR § 301 based on allegations that the defendant foreign corporation regularly solicited business in New York through an interactive website.  Here, Gosain relies entirely on conclusory allegations that are insufficient to establish personal jurisdiction.  <u>See</u> <u>Gmurzynska v. Hutton</u>, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003), <u>aff'd</u>, 355 F.3d 206 (2d Cir. 2004) ("[C]onclusory allegations are not enough to establish personal jurisdiction."); <u>DirecTV Latin Am., LLC v. Park 610, LLC</u>, No. 08 Civ. 3987, 2009 WL 4019652, at *5 (S.D.N.Y. Nov. 23, 2009) (same); <u>Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.</u>, No. 00 Civ. 5663, 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) ("The plaintiff [in opposing a Rule 12 (b)(2) motion] cannot rely merely on conclusory statements or allegations ...; rather, the prima facie showing must be factually supported." (citations omitted)).  Gosain has made no factual allegation that Texplas's websites regularly solicit business in New York or conduct substantial sales in New York.  The Court is not persuaded that Shakeel's assertion that there are "many" website customers in New York constitutes a sufficient factual basis to support the Court's general jurisdiction over Texplas.  If the Court were not to require

-24-

more than mere conclusory allegations, "every entity or individual that ran a highly interactive website from anywhere in the world could be sued for any reason in New York."  Ski Train Fire I, 230 F. Supp. 2d at 383.  Accordingly, the Court finds that Gosain has not made a prima facie showing of personal jurisdiction sufficient to defeat Texplas's motion to dismiss.

## C.   FORUM NON CONVENIENS

The Defendants maintain that, even if the Court could exercise jurisdiction over SBI or Texplas, Gosain's claims should be dismissed on grounds of forum non conveniens. Whether an action should be dismissed pursuant to the doctrine of forum non conveniens is a discretionary determination.  See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 99 (2d Cir. 2000).  The determination involves two steps: (1) deciding whether an adequate alternative forum for the dispute exists; and (2) balancing the public and private interest considerations enumerated by the United States Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947) to determine "whether the convenience of the parties and the ends of justice would best be served by dismissing the action." Murray v. British Broad. Corp., 81 F.3d 287, 293 (2d Cir. 1996).

Because the Court has found that it cannot exercise subject matter jurisdiction or personal jurisdiction over SBI and Texplas, respectively, the Court declines to conduct an exhaustive analysis of the applicability of the forum non conveniens doctrine.   Nevertheless, the Court notes that, even if it could exercise jurisdiction over the Defendants, it would likely dismiss the action on forum non conveniens grounds.   The Second Circuit has previously found that the courts of India are an adequate alternative forum.   See In re Union Carbide Corp. Gas Plant Disaster at Bhopal, 809 F.2d 195, 202-03 (2d Cir. 1987). Further, the Gulf Oil public and private interest considerations weigh heavily in favor of dismissal.[3]   Here, the deference due to the plaintiff's choice of forum is not a weighty consideration because all the legally significant acts underlying Gosain's claims took place in India, essential witnesses are located in India outside of the limits of the Court's subpoena power, and adjudication of this dispute would likely involve application of Indian law.   An Indian court would thus be far better situated

---

[3] The set of public interest considerations include: (1) administrative difficulties flowing from court congestion, (2) the local interest in having controversies decided at home, (3) the interest in having the trial in a forum that is familiar with the law governing the action, (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law, (5) and the unfairness of burdening citizens in an unrelated forum with jury duty.   The set of private interest considerations include: (1) the relative ease of access to sources of proof, (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses, and (3) "all other practical problems that make trial of a case easy, expeditious and inexpensive."   Murray, 81 F.3d at 293-94; see also Gulf Oil Corp., 330 U.S. at 508-09.

to evaluate Gosain's claims and would have greater ease of access
to witnesses and evidence.

### III.   **LEAVE TO REPLEAD**

The Court has examined Gosain's proposed amended complaint
and finds that any further repleading would be futile.  Although
a court "should freely give leave" to amend "when justice so
requires,"  Fed. R. Civ. P. 15(a)(2), "it is within the sound
discretion of the district court to grant or deny leave to amend.
A district court has discretion to deny leave for good reason,
including futility, bad faith, undue delay, or undue prejudice
to the opposing party."  McCarthy v. Dun & Bradstreet Corp., 482
F.3d 184, 200 (2d Cir. 2007) (citations omitted).  Repleading
would be futile on the basis of the proposed amended complaint
because the pleadings there make essentially the same allegations
and seek the same relief as the Complaint here.   Gosain's
proposed amended complaint, filed after and in response to
jurisdictional objections raised by Defendants in their
submissions to the Court, adds no new allegations that would cure
the jurisdictional deficiencies described above.   (See Gosain
Affidavit, Ex. 1.)  Accordingly,  leave to replead is denied.

The Court notes that Gosain, by his own admission, is not
without recourse upon dismissal of this action.  He may, for
example, seek relief in the Indian courts.  As noted by Gosain
in the proposed amended complaint, the Indian courts have not yet
finally ratified the propriety of the auction of TechInvest's

-27-

assets: "[T]he issue remains subjudice in India based on allegations that the entire auction process stood vitiated by fraud and is thus liable to be set aside." (Gosain Affidavit, Ex. 1 ¶ 40.)

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants State Bank of India, New York Branch and State Bank of India (Mumbai) to dismiss this action (Docket No. 9) for lack of subject matter jurisdiction is GRANTED; it is further

**ORDERED** that the motion of defendant Texplas India Private Ltd. to dismiss this action (Docket No. 9) for lack of personal jurisdiction is GRANTED; and it is finally

**ORDERED** that the cross-motion of plaintiff Rajiv Gosain for leave to file an amended complaint (Docket No. 20) is DENIED.

The Clerk of Court is directed to withdraw any pending motions and to close this case with prejudice.

**SO ORDERED.**

Dated:    New York, New York
          26 January 2010

                                    VICTOR MARRERO
                                    U.S.D.J.

-28-